United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, CALIFORNIA NATIVE PLANT SOCIETY, CALIFORNIA WILDERNESS COALITION, SIERRA CLUB, THE WILDERNESS SOCIETY, DEFENDERS OF WILDLIFE, LOS PADRES FORESTWATCH, and the NATURAL RESOURCES DEFENSE COUNCIL,<br><br>        Plaintiffs,<br><br>  v.<br><br>DALE N. BOSWORTH, Chief, U.S. Forest Service, DAVID TENNY, Deputy Under Secretary for Natural Resources and Environment, Department of Agriculture, U.S. FOREST SERVICE, a federal agency, and U.S. DEPARTMENT OF AGRICULTURE, a federal agency,<br><br>        Defendants. | No. C 06-06523 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this action under the Administrative Procedure Act, both plaintiffs and defendants have filed motions for summary judgment. A single issue is presented: whether plaintiffs' administrative appeals of the revised Land and Resource Management Plans and Final Environmental Impact Statement were timely filed. Plaintiffs seek a declaratory judgment that defendants violated the APA by dismissing their administrative appeals and an injunction mandating review of plaintiffs' administrative appeals on the merits. Defendants have shown

1  that they did not violate the APA by dismissing plaintiffs' administrative appeal as untimely.
2  Defendants, however, did not state reasons for denying plaintiffs' request for discretionary
3  review of the Forest Service's decision to not consider the merits. Accordingly, plaintiffs' and
4  defendants' motions for summary judgment are **GRANTED IN PART AND DENIED IN PART**. This
5  action is remanded to the Forest Service for a statement of reasons why plaintiffs' request for
6  discretionary review was denied.

### STATEMENT

Plaintiffs Center for Biological Diversity, California Native Plant Society, California Wilderness Coalition, The Sierra Club, The Wilderness Society, Defenders of Wildlife, Los Padres Forest Watch, and Natural Resources Defense Council are environmental groups concerned with forest preservation. They brought this action to compel defendants Dale N. Bosworth, Chief of the United States Forest Service, David Tenny, Deputy Undersecretary for Natural Resources and Environment, United States Forest Service, and United States Department of Agriculture to review their administrative appeals on the merits. Plaintiffs and defendants agree on nearly all of the pertinent facts in this action.

The action concerns the Cleveland, Angeles, San Bernadino, and Los Padres National Forests. All are located in southern California. In the process of revising the Land Management Plans for the four forests, the Regional Forester for the Pacific Southwest Region of the Forest Service issued a record of decision for each. The decisions were based on the Final Environmental Impact Statements prepared by the service and were issued on April 3, 2006 (AR 1390–1488). Each alerted potential appellants that administrative appeals under 36 C.F.R. 217 must be filed with the Chief of the Forest Service in Washington, D.C. within 90 days of date specified in the published legal notice of decisions (*id*. at 1412, 1436, 1463, 1487).

On April 11, 2006, the Forest Service issued a letter to stakeholders informing them of the records of decisions for the four forests and alerting them to the deadline for appeals (AR 1490–91). Plaintiffs received such letters. Legal notice of the decisions was published in the Sacramento Bee on April 21, 2006 (AR 1493–94). These notices gave appellants two options for filing administrative appeals. Appeals could either be delivered via United States Postal

Service or via ground delivery or messenger service. The notices provided the following address for ground delivery:

> Chief, USDA Forest Service
> Attn: EMC Staff-Appeals
> Yates Bldg., 3CEN
> 201 14th Street, SW
> Washington, D.C. 20024

A different address was provided for delivery via the Postal Service. The notices also bore the following text near the bottom:

> *Note: U.S. Postal Service mail is routed through a security facility and may be delayed by several days. To assure that appeals are received within the filing period, appellants may use ground delivery {Fedex, UPS, or similar services} or may hand-deliver appeals between the hours of 8:00 a.m.–4:30 p.m., Monday–Friday.

This language implied that administrative appeals sent by mail could be delayed by some time, but did not refer to timeliness.

Plaintiffs prepared their appeals and sent them to the Forest Service via UPS on July 19, 2006 (AR 6852). Center for Biological Diversity employees entered the ground-delivery address from the notices into the UPS computer system, but the system did not recognize it as a valid address (Shields Decl. ¶ 15, Bond Decl. ¶ 6). The UPS system provided a substitute address that listed the Forest Service headquarters as being in the Northeast quadrant of the District of Columbia instead of the Southwest quadrant where it is actually located and where the government's notice had specified. The zipcodes on the two addresses also differed. CBD employees then contacted the Postal Service to see if it could confirm the address' validity. It could not (Shields Decl. ¶ 10). Kelli Shields, CBD's office manager, also attempted to contact the Forest Service office in Washington, D.C., but no telephone number was provided in the notices (Shields Decl. ¶ 9). She called the Forest Service's Regional Office in Vallejo, California, but there was no answer (*ibid.*). Plaintiffs then sent the administrative appeals using the address provided by UPS (*id.* at ¶ 11).

Although the administrative appeals were sent via overnight service, UPS was unable to deliver them on July 20, 2006, because of an incorrect address (*id.* at ¶ 13). The package had been routed to the wrong quadrant of the District of Columbia. UPS attempted delivery the next day and was successful. Plaintiffs' administrative appeals did not arrive at the Forest Service's

3

1  headquarters until July 21, 2006, one day after the 90-day appeal period had elapsed. The
2  Forest Service dismissed plaintiffs' administrative appeals in a letter dated August 4, 2006,
3  without review on the merits (AR 6850). On August 18, 2006, plaintiffs asked for discretionary
4  review of the dismissal (AR 6854–55). The Forest Service declined the request on September
5  5, 2006, in a very brief letter (AR 6857, 6859). Plaintiffs filed this action on October 18, 2006.

**ANALYSIS**

**1.   MOTION TO STRIKE PLAINTIFFS' EXTRA-RECORD DECLARATIONS.**

Plaintiffs' arguments rely on several declarations not found in the administrative record. Defendants move to strike the declarations of Kelli Shields and Monica Bond, or in the alternative, to have its own extra-record declarations of Delores Plum and Rob Griffith considered in the disposition of these motions. Plaintiffs oppose the motion to strike, but not the motion to allow defendants' extra-record declarations.

When reviewing an agency decision under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Ninth Circuit, however, recognizes some circumstances where the record may be supplemented: (1) if it is necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied upon documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; and (4) where there has been a strong showing in support of a claim of bad faith on the part of the agency. *Southwest Ctr. For Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). These exceptions are generally construed narrowly.

Plaintiffs first argue that this action is not a pure record review case because the agency's decision did not reach the merits of plaintiffs' administrative appeals. The agency here only decided to dismiss them as untimely and declined to exercise its discretion to consider the merits. Plaintiffs here do not challenge the agency's ultimate decision on the record because there was none. Here, considering facts outside of the administrative record is proper. Plaintiffs also point out that there was scant record associated with the dismissal of plaintiffs'

4

appeal and that as such it should be supplemented. Defendants' motion to strike plaintiffs' extra-record declarations is **DENIED**. Defendants' motion in the alternative to have its own extra-record declarations considered is **GRANTED**.

### 2. CROSS-MOTIONS FOR SUMMARY JUDGMENT.

Under FRCP 56(c), summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On appeal of administrative decision, there are generally no genuine issues of material fact, thus the Court's role is to make legal determinations based on those facts. *See Northwest Motocycle Ass'n. v. United States Dep't. Of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). Here, parties agree on the relevant facts, thus only legal determinations need be made.

#### A. Review of Agency Decisions Under the APA.

The APA entitles persons suffering legal wrong because of agency action to judicial review of agency decisions. 5 U.S.C. 702. Under the APA, "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. 706. "The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." "That is, an agency must cogently explain why it has exercised its discretion in a given manner and in reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Northwest Envt'l. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. Jan. 24, 2007) (citing *Motor Vehicle Mfgrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43, 48 (1983)).

#### B. Forest Service's Regulations Governing Appeals.

Under the Forest Service's regulations governing appeals of forest plans, plan amendments, and plan revisions, the "Reviewing Officer shall dismiss an appeal and close the

5

appeal record without decision on the merits when: (1) The notice is not filed within the time specified in §217.8 of this part." 36 C.F.R. 217.11(a)(1) (2000). Section 217.8(a)(3) requires that the notice of appeal must be filed "within 90 days of the date specified in the published legal notice for land and resource management plan approvals, significant amendments, or revisions, and for other programmatic decisions documented in a Record of Decision."

The regulations also addressed timely filing.

> Evidence of Timely Filing. It is the responsibility of the appellant to file the notice on or before the last day of the filing period. In the event of a question, a legible postmark will be considered evidence of timely filing. Where postmarks are illegible, the Reviewing Officer shall rule on the timely filing of the appeal.

36 C.F.R. 217.8(c) (2000).[*] The term "filing" was not defined in the regulations. Under the Forest Service's interpretation, there were two ways for an administrative appeal to be timely filed. Either the appeal could be received at the Forest Service by the deadline, or, failing that, a postmark could be used as evidence of timely filing. If the postmark was illegible, then the Forest Service could use discretion in deciding whether to accept the filing.

### C. Agency's Interpretation of a Regulation.

An agency's interpretation of its own regulation controls unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). First, the regulation must be ambiguous. Next, deference is only proper where "the agency's interpretation is based on a permissible construction of the governing statute." *League of Wilderness Defenders/Blue Mountain Biodiversity Proj. v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir. 2002). Finally, there must be "no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462.

Here, the regulation uses only the term "postmark" as evidence of timely filing. The regulations never otherwise define the term. Assuming, *arguendo*, that the plain meaning of

---

[*] The administrative appeals process at issue in this action is governed by 36 C.F.R. 217. That section was eliminated in 2000 because stakeholders were no longer allowed to appeal forest plans that had not yet been initiated. The Forest Service continued to use old planning regulations for forest plans that were already being implemented. *National Forest System Land and Resource Management Planning; Extension of Compliance Deadline*, 67 Fed. Reg. 35431 (May 20, 2002). The forest plans for the four national forests at issue here were initiated in 2000, so administrative appeals were governed by 36 C.F.R. 217.

6

1  "postmark" did not support the agency's decision, this term could be considered ambiguous.
2  Plaintiffs contend that it is not ambiguous because the regulation is plainly permissive of
3  evidence other than a Postal Service postmark, such as a UPS mailing slip. This bare assertion
4  is not enough to impart any plain meaning to the term that contradicts the Forest Service's
5  interpretation.

6  The agency's interpretation is based on a permissible construction of the regulation.
7  The dictionary definitions to which defendants cited and the case law cited herein show that this
8  is true. Apart from that, the Forest Service could have broadened the term to encompass ground
9  delivery service receipts. The Forest Service also could have explicitly included them in the
10 definition. It did neither, and the definition used by the agency is equally as plausible, if not
11 more so, as any definition presented by plaintiffs.

12 Finally, the interpretation reflects the agency's judgment on how to set up an orderly
13 appeals process. Plaintiffs contend, however, the deciding what is competent evidence of filing
14 is not an area in which the Forest Service has expertise. Plaintiffs might be correct. Outside of
15 its legal expertise, however, the Forest Service has the discretion to promulgate regulations to
16 govern its own appeal procedures. *See Appeal of Decisions Concerning the National Forest*
17 *System*, 54 Fed. Reg. 3342, 3342 (Jan. 23, 1989). It created its own procedure for doing so.
18 Thus, the Forest Service's interpretation of its own regulation should be afforded deference.

19 The Forest Service's administrative appeal procedures also conform to the goal of
20 establishing an orderly procedure by which its decisions can be appealed. The Forest Service
21 could clarify its regulation, that much is apparent. There must be a deadline, however, that
22 shows which appeals are timely. Indeed, the Forest Service and other government agencies
23 have long had the authority to dismiss administrative appeals as untimely. *See Glisson v.*
24 *United States Forest Service*, 55 F.3d 1325, 1326 (7th Cir. 1995) (holding that a timely internal
25 administrative appeal was required for exhaustion of administrative remedies); *Tagala v.*
26 *Gorsuch*, 411 F.2d 589, 590 (9th Cir. 1969) (holding dismissal to be proper when statement of
27 reasons in administrative appeal of decision of Department of Interior was filed one day late).
28 Additionally, the Tenth Circuit held that it was not abuse of discretion for the Board of

7

Immigration Appeals to deny a motion to reopen where the delay in filing the appeal was attributable to a delivery delay by UPS. *Mahamat v. Gonzales*, 430 F. 3d 1284 (10th Cir. 2005).

The record shows no instance where the agency previously allowed a late appeal to be pursued or otherwise was inconsistent in its application of the deadline. Nor is there any request for discovery by plaintiffs to develop the history of any such inconsistent practice. Therefore, this record does not demonstrate that the agency has been inconsistent in its applications of the deadline to late appeals. Accordingly, the Forest Service did not abuse its discretion in dismissing plaintiffs' administrative appeals as untimely.

### D. Timely Filing of Plaintiffs' Appeal.

Turning now to the facts in this action, neither party disputes the following facts. Plaintiffs sent their administrative appeals on July 19, 2006, the final day of the 90-day appeal period was July 20, 2006, and plaintiffs' appeal arrived at the Forest Service on July 21, 2006. Under the Forest Service's interpretation, plaintiffs' administrative appeals were filed late because they were not received within the 90-day period and they did not bear a postmark.

Plaintiffs argue that the use of the term "filing" in 36 C.F.R. 217.8(c) makes the date of receipt irrelevant. The term "filing" was not defined in the relevant regulations. Plaintiffs assert that there was no question that their appeals were timely filed because they were *sent* within the 90-day appeal period. This argument, however, relies on plaintiffs' own interpretation of the regulation, not the agency's interpretation. Plaintiffs would equate time of filing with time of sending. In support, they present past versions of Forest Service appeal regulations that they argue measure timeliness by the date of sending. All of the cited regulations, however, distinguished between appeals received and appeals that bore postmarks. The postmarked appeals were measured by time of sending. All others were measured by time of receipt. This is consistent with the way plaintiffs' administrative appeals were handled under the regulation at issue here. Plaintiffs' papers were not received within the filing deadline, thus there was a question as to timely filing. The Forest Service then looked to see if there was a postmark as evidence of timely filing. There was no postmark, so the appeals were dismissed as untimely filed. Plaintiffs' argument that the Forest Service used to judge timeliness based on

8

the time of sending simply does not hold up. The regulation at issue here is consistent with the Forest Service's past practices.

### E. Meaning of the Term "Postmark."

Plaintiffs next argue that the Forest Service's interpretation of the word "postmark" was arbitrary and capricious. "Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, and common meaning." *The Wilderness Soc'y v. United States Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (internal quotation omitted). In accordance with the Forest Service's interpretation of its own regulation, defendants argue that the plain meaning of the term "postmark" indicates the official mark used by the post office to cancel a stamp or postage. That is, the definition includes only mail by the Postal Service and excludes private ground delivery. Plaintiffs, on the other hand, urge that the *contemporary* meaning of a "postmark" encompasses a UPS mailing label. They argue that defendants' definition of the term postmark is too narrowly drawn and that a definition used by the Department of Commerce should be adopted. The Department of Commerce's regulations define a postmark as "independently verifiable evidence of the date of mailing, such as a U.S. Postal Service postmark, or other private carrier postmark, certified mail receipt, overnight mail receipt, or a receipt issued upon hand delivery to a representative of NMFS authorized to collect fishery statistics." 50 C.F.R. 600.10 (2004). As plaintiffs concede, however, this regulation was not made by the Forest Service. The Department of Commerce's regulation is clearer and more specific, but nothing compels the Forest Service to adopt it.

Plaintiffs next contend that they did precisely what the Forest Service asked by sending the appeal via UPS. They interpret the statement at the end of the notices regarding security delays as a recommendation or preference. The statement anticipated delays from the screening process for packages sent via the Postal Service, but the language was permissive, not perfunctory. Nothing mandates the use of ground delivery. Appellants may use ground delivery, or they may use the Postal Service. Furthermore, the statement did not address timely filing of appeals. The Forest Service allots a limited amount of time to respond to appeals. Wholly apart from timely filing, it is in the Forest Service's interest to receive appeals sooner

9

1 rather than later. A postmarked appeal may be timely filed even though delayed, but the Forest
2 Service would probably prefer that appeals be received sooner given time constraints.
3 Plaintiffs' assertion that they were somehow hoodwinked into using ground delivery simply
4 does not hold up.

5 As a fallback, plaintiffs argue that a UPS mailing label should be treated as a postmark.
6 The Ninth Circuit has not directly addressed this question. The Ninth Circuit has held,
7 however, that extrinsic evidence, such as witness declarations or postal receipts, could be used
8 to determine timely filing of a tax return under the relevant statute. That decision only
9 addressed delivery by Postal Service and did not consider the use of ground delivery services.
10 *Shipley v. I.R.S.*, 572 F.2d 212, 214 (9th Cir. 1978). In considering whether an appeal of a
11 Board of Veteran's Appeals decision was timely, the Federal Circuit declined to equate a FedEx
12 overnight mailing receipt with a postmark under 38 U.S.C. 7266. *Mapu v. Nicholson*, 397 F.3d
13 1375, 1378 (Fed. Cir. 2005). The relevant statute used slightly more specific language than the
14 regulation at issue, but like this action, the appellant could either deliver his appeal to the
15 agency or prove timely filing using a postmark. This order finds the Federal Circuit's logic
16 persuasive in holding that an agency need not equate ground delivery by common carrier to
17 delivery by the Postal Service. In *Mapu*, had Congress so chosen, it could have included
18 ground delivery services, or it could have chosen to use a more general term than "postmark."
19 It did neither. Thus the agency's interpretation was held reasonable.

20 Plaintiffs rely heavily on *Kreider Dairy Farms, Inc. v. Glickman*, 1998 WL 481926
21 (E.D. Pa. 1998), in support. The *Kreider* decision recognized that ground delivery services
22 have gained increased use and acceptance in the legal community. In rejecting an agency's
23 position that a FedEx mailing label was not equal to a postmark, the Court stated that ground
24 delivery services are just as reliable as the Postal Service and should be accorded equal weight.
25 *Id*. at *5–6. The *Kreider* decision was vacated by a later Third Circuit decision dismissing
26 plaintiff's appeal for lack of jurisdiction. *Kreider Dairy Farms Inc. v. Glickman*, 190 F.3d 113,
27 121 (3d. Cir. 1999). Plaintiff is correct that ground delivery services have gained acceptance,
28 but nothing in the case law or regulation at issue compels treating them the same as a postmark.

10

Accordingly, this order holds that defendants' interpretation of the regulation was not arbitrary and capricious.

### F. Accuracy of the Address Provided by the Forest Service.

Even if the plaintiffs' appeal would have otherwise been timely filed, plaintiffs argue, the address provided by the Forest Service was inaccurate. Plaintiffs present the declaration of Center for Biological Diversity's San Francisco office manager Kelli Shields who was responsible for mailing the administrative appeals. She entered the ground-delivery address provided in the notices for the Forest Service into the UPS system. It rejected the address and provided a new one (Shields Decl. ¶ 6). Shields was unable to get confirmation from the Postal Service that the provided address was valid (*id*. at ¶ 10). She and Monica Bond, another Center employee, attempted to contact the Washington D.C. Forest Service office but no telephone number was provided (*id*. at ¶ 8, Bond Decl. ¶ 15). Shields and Bond ultimately used the address provided by UPS to send the administrative appeals.

In response, defendants present the declarations of Delores Plum, the Space Management Officer and USDA Mail Liaison for the Forest Service, and Rob Griffith, Program Specialist for the Ecosystem Management Coordination staff of the Forest Service. Plum declares that the address provided in the notices, letters to stakeholders, and records of decision was the correct address for ground deliveries (Plum Decl. ¶ 6). Rob Griffith was charged with keeping track of the appeals received by the Forest Service (Griffith Decl. ¶ 3). Nine of thirteen appeals sent to the Forest Service via UPS used the address provided by the letters, notices, and records of decision that listed the Forest Service as being in the Southwest quadrant of the District of Columbia. The remaining four were those sent by the Center for Biological Services using the address provided by UPS (*id*. at ¶¶ 8–10). The provided address clearly worked for other appellants. The Forest Service was not hiding the ball.

Defendants pointed out at oral argument that plaintiffs had yet another way to short circuit any problems they had with the provided address. Plaintiffs sent the package containing the administrative appeals on the 89th day of the 90-day appeal period via UPS. At about 3:00 p.m., they discovered that there may have been a problem with the provided address. Knowing

11

this, plaintiffs could have sent identical copies of their administrative appeals on the 90th and final day of the appeals period via the Postal Service. That package would have received a postmark which would have been evidence of timely filing even if the package had been delayed.

Finally, the UPS mailing label on the package that ultimately arrived at the Forest Service bore the address listed in the records, letters, and records of decisions. Ultimately, when the UPS attempted to deliver plaintiffs' administrative appeals at the listed address, it was accepted. Those facts belie plaintiffs' assertion that the Forest Service did not provide a correct address. In any event, the Forest Service's decision to dismiss plaintiffs' appeals was not arbitrary and capricious.

### 3. DISCRETIONARY REVIEW OF PLAINTIFFS' ADMINISTRATIVE APPEALS.

After receiving notice that their administrative appeals were not timely filed, plaintiffs asked for discretionary review of the Forest Service's decision (AR 6854–55). It was denied in a terse letter from Susan-Younts Shepard, Director of Ecosystem Management Coordation (AR 6859). The letter did not give any reason for declining to exercise discretionary review, nor did it say anything at all about the standards it used to do so. The record does not reflect any reasons or explanations as to why the agency denied discretionary review.

Accordingly, as suggested at the hearing by government counsel, this action will be remanded to the Forest Service to file a statement of reasons for why it denied plaintiffs' request for discretionary review. In its statement, the agency must address the factors in the regulation allowing for discretionary review, 36 C.F.R. 217.7, and address the extent to which the agency's own notice inviting use of UPS delivery contributed to the snafu. The agency should also demonstrate the extent to which any denial of discretionary review is consistent with past requests for consideration of one-day late appeals.

## CONCLUSION

Fair deadlines serve an important objective in the orderly progress of our agencies and, for that matter, in our courts. Compliance with an agency's deadlines and procedural rules is necessary because "no adjudicative system can function effectively without imposing some

12

orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). Parties are given ample time to meet deadlines but once they arrive, everyone can turn the page and address the next chapter. If someone can be one day late, someone else will ask for two days — or more. Satellite litigation (including appeals) over how much or how little is too much would follow. The page would not turn. It would flutter back and forth. Instead of orderly progress, we would have many backward steps. It is not too much to ask professionals to meet fair deadlines. Professionals must often put in long hours, but even long hours are not required to meet a 90-day deadline. When 90 days is permitted, no one forces anyone to wait until 3:00 p.m. on the 89th day to do what could have been done earlier. Those who delay to the last hour leave no room for error. If an error occurs by them or their agent, they must blame only themselves.

For all the above-stated reasons, plaintiffs' and defendants' motions for summary judgment are **GRANTED IN PART AND DENIED IN PART**. The matter, however, is remanded to the agency to address the issue of denial of discretionary review.

**IT IS SO ORDERED.**

Dated: March 23, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE